The next case on for argument is U.S. Securities and Exchange v. Aron. May it please the Court. Andrew St. Laurent for the appellant, Frederick Aron. Your Honors, this is essentially a contract case. The contract that we are talking about is the 2013 judgment that was entered by the district court. As this court has ruled in numerous cases, consent judgments such as this one are to be interpreted and to be enforced as contracts. In December 2013, Frederick Aron entered into an agreement with the Securities and Exchange Commission in which he conceded the truth of every allegation and the complaint against him, number one. And number two, he also consented to the entry of substantial injunctive relief against him, including permanent injunctions against enforcement of the securities laws, a five-year officer and director bar, and a five-year bar on participating in the issuances of penny stocks. And in exchange for agreeing, giving up the substantial concessions, Aron received one thing from the Securities and Exchange Commission, and that was that the decision of monetary relief that would be imposed against him would wait until the conclusion of Mr. Aron's criminal case, which was then pending in the Eastern District of New York. This case, the Securities and Exchange Commission case, was proceeding in the Southern District of New York. And that is what I submit is clearly provided for by Section 5 of the December 2013 judgment. So what relief do you want from us in this regard? The September 1, 2015 judgment of the district court finding imposing approximately $2 million in discouragement and civil penalties should be vacated. The matter should be remanded to the district court. For it to go through this exercise one more time and reach the same conclusion? Well, Your Honor, the district court I submit may well not reach the same conclusion this time because now, at this moment, Mr. Aron can testify in his defense as to the issue of monetary penalties, something he could not do previously. Well, he could do it. Well, he could do so by putting himself in jeopardy of his criminal case. His criminal case has now been resolved. And is there a case that you can tell us from the Supreme Court or this court that says that's essentially anything that the court needs to worry about? That somehow controls the decision in this case? Controls the district court's decision? Well, Your Honor, the decisions of this court are replete with decisions holding that the district court is bound to enforce consent judgments that it has signed off on and that it is bound by those contractual provisions. Right, and the consent judgment didn't say specifically. It said you guys were going to come up with a schedule, if I'm remembering it correctly. Well, Your Honor, it did. But if you read the entirety of Section 5 and interpret all of the provisions as a contract, which is what this court has required the district courts to do in Geller and in other cases, it is a mechanism that clearly sets forth the intention of the parties that the decision of monetary penalties would proceed only after the conclusion of the criminal case. If you take out of that paragraph 5 only the provision that the district courts shall proceed upon motion by the Securities and Exchange Commission, that is the commission's argument. But that would render mere surplusage 90 percent of that paragraph. And it would completely defeat the purpose of that agreement on the part of Mr. Aron, which was to reserve decision on monetary penalties until such time as he could personally from his own mouth contribute to those determinations. What about the SEC's argument? The consent judgment doesn't literally bind the district court. It seems to set forth the mechanism for the briefing to go forward at an appropriate time without specifying that any other time would be inappropriate. And if this were really a substantive concern as opposed to a procedural mechanism for moving the case forward after the criminal case concluded, the judgment would have been more explicit on that point and the district court would thus have been put on better notice that this was a substantive part of the agreement. Well, Your Honor, I do have to disagree with the commission. I do think that the consent judgment is very explicit on that point and on the timing of monetary penalties. And to address a couple of other concerns that are raised by that argument, I mean, first, it seems to suggest that the district court is not bound by the consent judgment, which this court has clearly held is not the case. Secondly, that is, I don't believe, any fair reading of that provision of the contract, and this court has held that consent judgments are interpreted according to ordinary contract principles under the law. And third, and probably most importantly, if that had been the understanding of the district court at the time, that it could move forward on its own motion, which it ultimately did in February 2015, to set a briefing schedule, out of fairness to Frederick Aaron, the district court should have so informed Frederick Aaron at that time. If the commission had that view of the agreement, they should have informed Frederick Aaron at that time because I believe any reasonable person reading this agreement at the time it was written would believe that the monetary penalties could only be briefed and decided after the conclusion of Mr. Aaron's criminal case. And in terms of the prejudice to Mr. Aaron, which is answering Judge Hall's first question, the district court clearly held that it needed to do additional fact-finding in order to assess monetary penalties, and that's in the appendix of 573. It issued specific interrogatories to Mr. Aaron and to the commission in 2015 in order to get the information that the district court believed it needed to assess monetary penalties. In response to those interrogatories, Frederick Aaron interposed his Fifth Amendment rights. The SEC then argued on that issue of monetary penalties that his invocation of the Fifth Amendment should be held against him. And finally, in reaching its decision on the monetary penalties, the district court did hold Mr. Aaron's invocation of the Fifth Amendment and his general failure to provide evidence against him in determination of those monetary penalties. Did your client specifically object before the district court to going forward on Fifth Amendment grounds? He specifically objected to going forward in violation of the 2013 judgment. That was the nature of the objection in February 2015. But what you want us to say is, well, of course, anybody knows, and maybe any lawyer knows, but anybody knows that this is an assertion of a Fifth Amendment privilege. I mean, where is that in the language of this? In the 2013 judgment, Your Honor. It is not spelled out in the 2013 judgment. But isn't that a shortcoming of the 2013 judgment? I don't believe so, Your Honor. I think an ordinary contract does not need to manifest the motivation of the parties in order to be enforceable. It may have been a better idea to include it, but it renders it no less enforceable for any reason or no reason. Frederick Aaron bargained with the commission to get this judgment. The district court signed off on it. The court was then bound to enforce it by its terms. The court did not do that to Mr. Aaron's considerable harm here, Your Honor. Thank you. Thanks. And you've reserved some time for rebuttal, Mr. Sinclair. Thank you, Your Honor. Mr. Alvarez? Good morning, Your Honors. May it please the court, Paul Alvarez for the Securities and Exchange Commission. Your Honors, the district court's judgment should be affirmed. District courts have broad discretion to efficiently and expeditiously manage the cases on their docket, and that includes the ability to set and amend briefing schedules. And the district court's order setting briefing on monetary relief here was a reasonable exercise of that discretion. And in weighing in on this issue, there are a few important things to keep in mind. The first is that Mr. Aaron has not identified either below or before this court any cognizable harm, let alone shown that a manifest injustice has occurred as a result of the district court's order. He has suggested to us today, if nowhere else, that if his client had been able to testify, there is a likelihood that Judge Rakoff would have entered an order of lesser magnitude. Well, a few things about that, Your Honor. First, he mentioned that Judge Rakoff drew an adverse inference on his invocation of the Fifth Amendment, and that's actually not true. Judge Rakoff did not do that. Second, in terms of the scope of what the prejudice was here, my friend mentioned a lot that this has something to do with the civil penalties and the entirety of the judgment, and that's, in fact, also not accurate. The only, to the extent there was any effect, it affected only the one portion of the judgment related to the approximately $1.053 million in cash withdrawals from accounts containing defrauded investor money from which an unknown payee had withdrawn cash and which we know Mr. Aaron is undisputed, had signatory authority over those accounts. And so, to the extent he's talking about the ability to introduce evidence, it only would have been insofar as he could show that that undisputed $1.053 million amount could be apportioned in some way other than to him because it's a joint and several portion of the judgment. But the other two aspects of the disgorgement judgment, the $282,500 and the $212,500 of interlinked shares, those figures are not disputed and he has only challenged the legal basis for those. And the civil penalty, which is based upon those two figures, also would not have changed. In terms of the consent judgment, what is your reading or construction of the consent judgment with the rights of the appellant to wait until after the Eastern District case, criminal case, was resolved? As we stated in our brief, Your Honor, first I would say we believe this is an abusive discretion case and not a contract case as my friend has characterized it. We're not here talking about what the words mean within the district court's order. We're actually talking about the legal effect of the order setting the briefing. So just to make that point clear, and I think even if we were to look at the terms, there's nothing explicitly stating that the district court could not do what it did here. In fact, district courts set and amend briefing schedules all the time. And those briefing schedule orders have language very similar to this. The party shall submit a brief on X date, a response on this date, and a reply on the next date. And then the district court, in its discretion, has the ability to amend that. But this isn't a case in a vacuum. There's a criminal case in the Eastern District. There's this case, a civil forfeiture case, in effect, in the Southern District, and all of the appellant's assets have been frozen, right? Yes, that's true. So from the point of view of the SEC, what is the harm in waiting, agreeing to wait until after the Eastern District case is resolved, even if it takes a little longer than we would love in our best case scenario, 90 days, 70 days to try a case? Well, certainly you raise a good question, what would be the harm? But this is a question that falls within the district court's ability to assess both the district court's independent interests in ensuring the swift resolution of cases on its docket and balancing those interests with the party's interests. And I think the district court took— So what benefit did the appellant get from the consent judgment, other than this particular alleged benefit that the district court here in the Southern District would not proceed with the forfeiture process? Sure. Or is it just an empty agreement that you really didn't need to engage in? Well, there's a lot of talk about the fact that this was purportedly bargained for, this particular provision was bargained for by Mr. Aaron, and that that's the only reason why he entered into this consent judgment. There's nothing in the record to support that at all. And certainly I think if this was a provision that he had bargained for, there would have been additional language in the consent judgment itself, perhaps even making the consents to liability contingent upon the resolution at a later date of monetary relief. But, again, we also have to point out that Mr. Aaron received, after the consent judgment was entered into, he had 14 months during which he could resolve his criminal case before monetary relief was even touched. And during that time, there were five continuances of the criminal case. And then at the meeting with the judge, trial counsel for Mr. Aaron informed the judge that he expected the criminal case to be resolved within a matter of weeks. And the judge, again, gave him that time to resolve the case. But what happened was that the district judge in the criminal case then continued the case for another year. So he got, there's no evidence that he bargained for this in the first place, but even if there were, he did get a bit of what he bargained for. He got 14 months where he could focus entirely on the criminal case, and yet what happened was 14 months of nothing, and then an additional year of waiting again. And I think under those circumstances, it was reasonable for the district court to take the steps that it did. And I should also remind the court, Your Honor, that the district court took affirmative steps to mitigate any potential harm that could come to Mr. Aaron as a result of the parallel proceedings. The district court called for a dollar-for-dollar reduction in any criminal penalties or restitution that would be ordered in the criminal case. And it's my understanding, as he's pled guilty, he has agreed to pay a restitution judgment and that he will get a dollar-for-dollar reduction from the civil judgment. And the district court also delayed the enforcement of the civil judgment here until the criminal judgment. So this really shows that the court was trying to balance its own independent interests of resolving the case on its docket while maintaining and ensuring that the harm to the defendant was minimal. Did the SEC ever take a position before Judge Rakoff that, well, Section 5, particularly the provision that we've been talking about, requires us to agree on a briefing schedule, Your Honor, and respectfully, the court ought to enforce that provision? There's nothing in the record that that occurred, Your Honor. It's my understanding that the judge called the parties, asked about the status of the criminal case, inquired as to why the case had not been resolved, and then was informed that the case was about to be resolved, gave another month, and gave the parties the opportunity to resolve that, or gave Mr. Aaron the opportunity to resolve the criminal case. And it went on for another year, and within that time, Judge Rakoff? That's correct. And to Mr. Aaron's argument that he somehow had to devote simultaneously his resources to the defense of both the civil and the criminal case, that's actually just belied by the record. Again, he had 14 months before monetary relief was even begun, and another year and a half after monetary relief had been fully briefed to devote solely to the criminal case. And while the briefing on monetary relief was taking place, again, the criminal case had been continued for another year, so he didn't have to devote any resources toward his defense in the criminal case. So the harm is, if any, is quite minimal. The effect of the district court's order also is minimal, and for those reasons, the district court did not abuse its discretion in setting the briefing schedule on monetary relief. And I see I only have a— Can I just ask one? You started by saying he asserted the Fifth Amendment privilege, but that to the extent that he wasn't able to proffer evidence about the size and amount any fines should be, that only relates to these accounts where he was a signatory. But I believe I recall that in Judge Rakoff's opinion, he also alluded to the fact with regard to the legal fees that were disgorged. The argument was made that part of this was in connection with lawful legal work, and there's an allusion in his opinion to the fact that he can't parse— the overall gravamen here was fraud, and he can't parse out what portion might have been legitimate and what portion illegitimate. So wouldn't that also be a context in which his ability to testify might have affected the size of the fine or the amount at stake? Or am I missing something? I don't believe so, Your Honor. First, when briefing on monetary relief was ordered, he never raised his Fifth Amendment argument there. In fact, he only raised his Fifth Amendment rights in response to the court's interrogatories, which, again, related only to those accounts and the cash withdrawals. So he certainly fully briefed monetary relief without regard to any Fifth Amendment concerns, so I don't think that that would come into play here. And I think Judge Rakoff's point, that was the—my recollection is that is the alternative point on liability, on disgorgement as to the fees. In fact, his primary point is that he was working for an entirely fraudulent enterprise, so he is not entitled to any fees associated with that work. And even insofar—I say I'm over my time. May I finish? Thank you. Even insofar as there were legal sort of not per se illegal acts that were done as the undisputed allegations in the complaint, and I'll refer the court to paragraph 37 and 54, among others, show that those actions of incorporating the permapave entities and drafting the conversion agreements, although not per se illegal,  And so that is another reason why he should not be entitled to receive any fees from those not per se illegal activities because they are causally connected to the fraud. Unless the court has any further questions, I would just say for the reasons stated in the brief and here we would ask the district court's judgment be affirmed. Thank you. Thank you, Mr. Alvarez. And Mr. St. Lawrence, you've reserved two minutes for rebuttal. Yes, Your Honor. Thank you. Just briefly and to follow up on Judge Livingston's question, the district court employed a burden-shifting analysis in determining the amount of disgorgement under which the commission had to make a prima facie case and then it was Mr. Aron's burden to rebut. And he could not rebut given the pendency of his criminal case. And the district court specifically in assessing the $282,500 in legal fees as disgorgement specifically noted that Aron had, quote, failed to come forward with evidence of compensation for lawful work, the most likely source of that evidence obviously being Mr. Aron himself. And that is repeated with regards to the other numbers that are in the disgorgement remedy. He failed to come forward with another value for the interlinked shares, which the district court valued at $212,500. And similarly with regards to the million dollars plus to the, quote, unknown payee, he noted that Mr. Aron had failed to identify amounts that he had not received as a result of the fraud. All of those were issues that Mr. Aron could have and could still address were he able to testify without obviously the criminal case looming over him, which was why he entered into the 2013 judgment in the first place. And just to address very briefly the commission's argument that the district court has the ability to run its docket and to schedule a motion practice, that's obviously true. The district courts are vested with great discretion in doing so. This, however, was not a scheduling order. This was a judgment. This was a judgment that was entered conditioned on Mr. Aron making very significant concessions about his liability. He conceded it. And as to the appropriate equitable remedies which were severe and which were imposed in that judgment. The one benefit to Mr. Aron he did not receive and he should have. And I would ask the court to vacate and to remand for further proceedings in order to vindicate that interest of Mr. Aron's. Thank you very much. Thank you. Thank you both. We'll reserve decision in this case.